May it please the Court, my name is Tim Balson and I represent the appellant Kristen Barnett. The trial court in dismissing Mrs. Barnett's religious discrimination case wrongly found that Mrs. Barnett failed to plausibly plead any religious beliefs. In particular, the court held allegations in her complaint like she had been instructed by God to abstain from the vaccine could not be religious because, as the court said, such claims would amount to a blanket privilege that, if permitted, would undermine our system of ordered liberty. All other circuits to consider very similar trial court rulings, and I believe there are four or five depending on how you count the circuits now, have rightly reversed these kind of decisions. This is because Congress at 42 U.S.C. 2000e broadly defines religious protections to cover, quote, all aspects of religious observance and practice as well as belief. And the Supreme Court has demanded that courts show a high level of deference to plausible religious beliefs. Noting, for example, in Employment Division v. Smith that, quote, repeatedly and in many different contexts we have warned that courts must not presume to determine the plausibility of a religious claim. The lower court here, however, failed to heed that warning and its decision should be reversed by this court. This is Barnett, a non-denominational Protestant Christian, outlined her religious objections to the COVID-19 vaccine. So is there no limit to what can be claimed to be in the name of religion? One of her statements is, quote, if you do anything you believe is not right, you are sinning. That's pretty broad. Is there any limit? Yes, Your Honor. I understand the question. Maybe I'll take that in two pieces. So I mean, the issue here is the court was looking at the issue of religiosity. So of course there are limits as to sincerity. There are restrictions as to an undue hardship. It's actually written into the Title VII statute. But as to limits on whether a person believes something and it's their religious belief, no, I don't think the court should get into deciding is that a plausible religious belief. At this stage, is there any, is there, at the next stage, if this complaint goes forward, then is there a limit? Yes, Your Honor. Absolutely. Absolutely. Right? I mean, the sincerity question is one that the courts have said is a credibility question and it should be taken up on summary judgment. And that is certainly a limit to a belief like that. And the same with an undue hardship. It's an affirmative defense for the employer and it should be taken up, you know, as a summary judgment issue or a trial issue. But here we are on a motion to dismiss and on a, as a pleading matter. And I will say what courts are supposed to do, what they've been told to do by the Supreme Court is credit the religious beliefs. And the courts have said this is the EOC guidance. It was said in the Welsh case for the Supreme Court and it was said in the other three circuits who have looked at this issue. Credit the religious beliefs at this stage, at the pleading stage, where we are. Absolutely. At the pleading stage. On your disparate treatment claim, I'm struggling with how you define Ms. Burnett's protected class. You talk about her religious beliefs being unique, that she, that the employees, the employees belong to a more prominent religion. What is her protected class? Yeah, Your Honor, if you get into that level of detail, I'm not sure that the pleading necessarily has that. But at this stage, it's a question of plausible, you know, plausible pleading beyond a speculative level. And what we have said is, I mean, her protected class to be exact is she's a Protestant non-denominational Christian. And we, and we feel like, you know, her beliefs are very particular to her, that she believes that the Holy Spirit can speak to her. And those are the beliefs that we feel like the employer found were not legitimate. As, if I may, as to disparate treatment, I would just note that, you know, we have pled, this is a very unique fact situation because the employer set up a committee to decide whose beliefs were religious and who were not. And then they picked, like we said in our complaint, winners and losers. And so I can understand the Court's concern on this issue, but I would say here there's direct evidence that they literally looked at her beliefs and then said not legitimate, and then looked at somebody else's and said legitimate. And at this stage, without discovery, we don't even know exactly why they made that determination. That was part of the reason we pled it in the way that we have. Perhaps because she took, I mean, we don't know, but perhaps because she took other vaccines, but just not this one. Yes, Your Honor, and maybe. I mean, maybe that's why the employer found such. But that's what discovery's for. Exactly. And I would note, you know, the Thomas Review Board says when it comes to deciding whether it's a religious belief, you don't have to be consistent. So the fact that she may have taken every vaccine before this, and again, I want to say, she prayed about this, you know, the defense or the apoly in this case in the Court, I felt like kind of looked at this with bad faith and said, oh, this is a blanket privilege. But she said in her statement, I prayed about this for a month, and her only objection was to this set of COVID vaccine, COVID-19 vaccines. It was not a blanket privilege. It was specific, and it was guidance she got from the Holy Spirit, patently religious, and then the employer said, well, that's not sufficient, as if it knows better about Ms. Barnett's beliefs than she did. I understand your argument as to failure to accommodate. I still don't understand your argument as to disparate treatment. As to the protected class or some other issue, Your Honor. That's part of the case. She has to prove that she was in a protected class and that she was treated differently because of her membership in that class. Yeah. Your Honor, I would say this is a, the lower court didn't reach this issue, and this is not the basis for the lower court's opinion ruling against us, and so I would say that's now an issue that probably should go back to the trial court and not be decided as a matter, a first matter by this Court. But again, we, you know, our position has been she's clearly in a protected class. She's a Protestant Christian. Her beliefs then should have been respected for what they were, and they were not, and we don't know through discovery yet, Your Honor, which beliefs they found legitimate and which ones they found illegitimate. All we have pled is they found hers not to be legitimate, and she's a protected class because she's a Protestant Christian, Your Honor. But didn't you just say a minute ago that they, that the, I believe found some religious exemptions, and so how was she treated disparately because she was a Protestant Christian when they accepted other Christians' beliefs? I don't know that we know that they accepted other Christian beliefs. They accepted other religious beliefs. Okay. There are, like the Christian scientists, religions who say no vaccines, and it's in their religious teachings. We think the employer here may have looked simply at, does your scripture say, you know, you can't do something? Well, if not, we're not going to credit your guidance from prayer. And then that goes back to this stage of the pleadings. Yes. Yes, Your Honor. You know, we are on a motion to dismiss, and it was a question of whether we pled it sufficiently. It's a very low bar, especially because you don't know. You don't know exactly why they picked on our client and not someone else as it relates to disparate treatment, particularly. I did want to point out, in addition to the other three circuits, the Sixth, Seventh, and Eighth Circuit literally considered these facts, a similar ruling from the court, and similar beliefs from the employees, in reverse. But this court also has a precedent, the consular energy precedent, which we cite in our brief. And I just wanted to note how similar it was to this case. In that case, the employee had a religious belief against taking the mark of the beast, which is a mark on your right hand, and the employer was asking the employee to get a scan of his left hand. And this court, well, let me, the court found there that the employee studied scripture, prayed very hard, and in good conscience found he could not go along with using the scanner. And then this court, in reversing the lower court there, said, it is not the employer's place, nor ours as a court, to question the correctness or even the plausibility of the plaintiff's religious understandings. And I would submit that that's the same issue here. This blanket privilege analysis that the trial court came up with does nothing more than question the acceptableness of religious beliefs, and this court should reverse that. I see I'm almost out of time. Does the panel have any questions? Thank you, Mr. Bossert. Mr. Eberstadt? May it please the court, Rick Eberstadt for the Commonwealth of Virginia, and if I may in my limited time, I'd like to address three points, please. The first is the, I'd like to talk about the other circuit courts that have addressed this claim as to Barnett's religious belief. The second is as to the district court's error below, and the third is briefly touching on the VHRA claim here. So as to the first point, several other federal courts of appeals have addressed cases that are almost identical to this one, since the briefing in this case began and slightly beforehand. There were cases that involve a medical employee who is a practicing Christian who refuses the COVID-19 vaccine based on their belief that their body is a temple and that to take it would be to violate their religion. In two of those cases, it actually went further and the plaintiffs had specific concerns about vaccine safety and tied that to their belief that their body is a temple, and they had reached that decision through prayer. And in all of those cases, sister circuits here have held that those are religious claims for the purposes of Title VII. In fact, in one of those cases, Passarella, the circuit court overturned a district court case upon which ANOVA relies for the opposite proposition here. We would ask this circuit to reach that same conclusion that other circuits have unanimously reached. As to the way in which the district court erred below, the district court erred in two ways. It applied an inapplicable test to the question here, and that is the Africa test developed by the Third Circuit. That test applies to determine whether a set of beliefs is a religion, and it's designed for that purpose. A couple of different circuits have different tests designed for that purpose. The test is inapplicable here, where the question is instead whether Barnett has a religion, the religion is non-denominational Christianity, and that test would go to determine whether Christianity is a religion, which there's no dispute that it is. And it's inapplicable to the more granular question of whether her belief that she believes falls within her religion is indeed a religious belief. And no circuit court has applied the Africa test to determine that particular level of granularity. As for the other error that the district court had here was this misunderstanding of a blanket privilege issue, which, Judge Thacker, I think you were asking about as well earlier. Now, I believe that that problem is that the district court conflated later questions in the Title 7 question, whether her belief was sincere and whether her belief presented an undue hardship upon the employer. At this stage, those questions are not relevant. And then finally, touching briefly on the VHRA, the VHRA protects Virginians against discrimination, including religious discrimination. It is explicitly meant to be construed liberally, and it has a slightly different definition than does the Title 7 definition of religion, in which it says that any outward expression of religious faith is covered. So to the extent that the district court dismissed the VHRA claim as not covering religion, as Barnett's belief is not being religious, it erred to that extent as well. And if this court has no questions, we would ask to reverse on that. Thank you very much. Good morning. May it please the Court. My name is Nancy DeLogue. I represent Apellia Nova. The district court correctly dismissed Ms. Barnett's religious discrimination claim not because it was insufficiently religious, but because to the extent she had identified religious beliefs among her medical concerns, she failed to allege facts tying those beliefs to what she described as her, and I quote, personal decision that, quote, in this current moment, she should not receive the COVID-19 vaccine, a decision that she characterized as something might change in a year, or maybe two years. But she had prayed about it, and that she would continue to pray about it, and that if the Holy Spirit told her differently, then her view might change. How is that not a claim that passes muster at this stage of the pleadings? The Holy Spirit instructed her. Well, I'm not clear that that's exactly how her exemption request was phrased, Your Honor. But what she claimed was that the Holy Spirit... That's the allegation in the complaint. Yes, the allegation in the complaint. And that's what we're assessing here. As well as the exemption requests that were made part of the complaint, and it's actually... I'd like to point out to the court that this is a little different from your typical motion to dismiss in that all of that information was before the court below. They had an opportunity to review her actual exemption request to Inova, which is, of course, you have to convey to your employer what your objection is, and so that's important to her prima facie case that she'll eventually have to make. In this case, however, she said that she might change her mind over time, but it was not something that was immutable. She also stated, for example, that she... Excuse me. She stated that she had an opportunity to change her mind. She said she was not an anti-vaxxer, she said that she and her children were vaccinated against any diseases, and most of all, that if she felt led to do so, she would be willing to get the vaccine, but she had not yet felt led to do so. There was less of this suggestion that she had been advised or that she could not do so. And really, that's the gravamen of this. Was she forbidden by her religion to actually be vaccinated? A plaintiff has to prove... Isn't that something that would be assessed at the next step of the litigation? I'm not certain what more might be pled, Your Honor. All of her exemption requests were before the court, whether it was sincere or not. It sounds like you're asking us and the district court to assess the sincerity of her religious belief at this stage, and I don't see that that's the role at this stage of the pleadings. I agree with you, Your Honor. The judge below actually has been characterized as reviewing the religiosity of the claim, and they've attacked the Ellison decision by saying that it would, the court's language about a blanket privilege to claim an exemption. But what the Ellison decision below actually held was, and this is a quotation, a plaintiff must provide sufficient allegations regarding his subjective personal beliefs, how those beliefs are related to his faith, and how those beliefs form the basis of the objection to the COVID-19 vaccination. The court below found that she had not done this. This is consistent with the Dockman concision before this Supreme Court, excuse me, before this court, which held that only religious beliefs, not secular beliefs, need to be accommodated. And that case involved when someone needed to have time away from work to prepare to observe their Sabbath versus when, you know, time that they wanted to have away in order to get ready for the Sabbath and what was actually prescribed by their religion. And that decision is grounded on the Supreme Court's decisions in Welsh and Seager. Discrimination claims are not subject to different pleading standards. That's another suggestion that has been made, but the Supreme Court's decision in Ashcroft v. Iqbal was, of course, a type of discrimination case. What they needed to show was that her beliefs were sincere, not just in her scheme of things, but they were religious. And it is a delicate task for a court to determine. That is certainly true. At the height of the pandemic, Inova was a healthcare system charged with protecting the lives and the well-being of its patients. It first adopted a vaccine policy, later mandated the vaccines, but it granted religious exemptions broadly at that time. When the Centers for Medicare and Medicaid Services adopted its own regulation impacting Inova's policy, it stated that they had to revise their program to come into compliance with that and only grant exemptions that were in compliance with Title VII, which was somewhat more narrow. At that point, Inova's policy became more than just a policy. It also was trying to walk the line between a legal requirement, which had a deadline as to when Ms. Barnett needed to be vaccinated, and her submissions did never state why she was forbidden by her religion for complying with that requirement. There's no doubt that the CMS mandate... She's alleged in her pleadings that God had directed her not to take the vaccine and that she felt that if she did, after guidance from God, that she would be sinning. She did, but... Why isn't that enough at this stage, when we take the allegations of the complaint as true? We take the allegations of the complaint as true, but one of the errors that some of the other circuit courts that my co-counsel have referenced is you have to look at the complaint and the pleadings as a whole, including those exemption requests that were actually submitted to Inova, which were largely secular. Ms. Barnett stated she shouldn't be vaccinated, owing to doubts about the safety. Yes, it was arrived after prayer, but she didn't connect that decision to religious beliefs when she sought it. There's nothing in the complaint to connect her hesitancy to be vaccinated to an aspect of her religious beliefs, and that's why the court concluded that to allow the complaint to move forward would undermine our system of ordered liberty, and that's something that comes from Wisconsin v. Yoder, by elevating her personal desires above a rule that fulfilled an important societal interest. During the pandemic, the EEOC published guidance, and the guidance was based on the regulation, and it states, Title VII does not protect social, political, or economic views of personal preferences, objections to a COVID-19 vaccination requirement that are purely based on those considerations, or any other non-religious concerns, including about the possible effects of the vaccine, do not qualify as religious beliefs, and the CMS may... So are you suggesting that because she included in her request non-religious reasons and religious reasons, that then her request was no longer a religious request? It sounds like she had secular reasons, and she had religious reasons, and for purposes of this case, she's relying on the religious reasons. Yes, Your Honor, and I think that the law is clear that both religious and secular reasons can be raised in the same exemption request. The focus, however, is were the religious exemptions that were raised something that actually stated would have conveyed to a reasonable employer that she was forbidden from receiving the COVID-19 vaccine, which was the requirement for religious reasons, and that she did not do. Hesitancy for a vaccine is not generally regarded as a religious objection, and Ms. Barnett does claim that she's a Christian, and that her beliefs are unique, variously. Acknowledging that Christianity is a religion, there's nothing self-evident about Christianity to suggest she couldn't be vaccinated on that basis. So then you need to look at her more individualized beliefs, allegedly requiring her to make medical decisions in conjunction with prayer. And although prayer is understood as an aspect of religious belief and practice, she wasn't asking Inova to accommodate her need to pray. She was asking Inova to accommodate her preference not to be vaccinated, because after praying, she didn't feel led to be vaccinated. The fact that adherents pray about various matters in their lives does not suggest that any and all quotidian decisions a person may make after praying about them are religious directives. And whereas here they're described as medical, they're described as transitory, a court must engage in that delicate task of determining whether the asserted belief is religious. The district courts throughout this circuit have coalesced in agreeing that blanket protections for personal decisions ratified by prayer would provide a limitless reason to evade any employment requirement. And it's frankly hard to imagine the Supreme Court's decisions in Welch and Seeger protecting individuals from military conscription if those individuals had stated that their objections might change in another year or in connection with another war. Yet in her appeal, Ms. Barnett now goes further than in the arguments she advanced below and claims she didn't receive a medical decision after prayer. She was entitled to an accommodation by her employer because of all decisions she makes are in fact informed by prayer. And that argument proves too much. It's an argument in favor of individual self-determinism that the Supreme Court cautioned against. Again, interpreting the regulations which in turn rely on Seeger and Welch, EEOC has issued guidance to its investigators on religious discrimination and accommodation. The agency does not require why someone holds a particular belief as religious, but it does whether the religious belief system, and those are their words, is sincerely held. When it's not clear that the request is based on a religious belief or practice, the employee has the obligation to provide sufficient information to permit the employer to make a reasonable assessment of whether the request was based on a sincerely held religious belief and the conflict between that belief and the employment requirement. The Third Circuit's Africa decision provides guidance on determining whether the asserted belief is religious rather than secular. And as Inova pointed out in its brief, this court has affirmed decisions citing Africa's useful indicia with favor where the court is in fact called to evaluate whether religious beliefs are religious rather than secular and rejecting a more subjective approach from the Second Circuit. Ms. Barnett, well, the Federal District Court here in Richmond recently noted, there's no facial dissonance between vaccination and keeping a body pure, and a conviction that glorification of self, glorifies the Lord, accepted as true, does not lead a conflict with vaccination. The Commonwealth agrees that no duty to accommodate arises where the asserted religious belief does not conflict with the employer's policy, and that's on page 29 of their brief. And so that, for the same reason her state court claim failed to hold otherwise, would allow every person to make their own employment standards, and if disappointed, to hail their employer into court. Their position also contradicts Ansonia Board of Education versus Filbreck, in which the Supreme Court held that neither the legislative history of Section 701J of Title VII, which is the reasonable accommodation section, support the conclusion that employer must accept an employee's proposed accommodation, unless it can demonstrate an undue hardship. Turning to the disparate treatment claims, Ms. Barnett's complaint failed to meet the minimum pleading requirements of Federal Rule of Civil Procedure 882, because it relies primarily on statements. The complaint alleged Inova granted exemptions to persons who were from more prominent religions or had more conventional beliefs than those she espoused, but those are conclusions, not factual allegations. Nor is there any factual allegation that Inova treated any religious adherent of a particular faith different from any other. Ms. Barnett's brief reply actually claims, I think I heard it this morning, Inova literally created a committee for the purpose of differentiating between the religious beliefs of certain of their employees, but nowhere does that factual allegation appear in the complaint, and nor did it appear in any pleading before the reply brief. These claims are unsupported by any fact that might render her claim plausible, as opposed to a bald statement that Inova is liable. There's certainly no direct evidence of discrimination in the complaint. Claiming that others were accommodated while she was not is also evidently duplicative of her failure to accommodate claim absent additional facts. That was the only conduct she claimed of, and a comparison of each of the counts in the complaint, paragraphs 41 and 45, 53, 54, and 62 to 64 on joint appendix 11 to 16, shows the only adverse action challenge is the denial of the accommodation, excuse me, of the exemption request, and each relies upon the same set of facts. It seems to me that at the pleading stage, because the elements are exactly the same for failure to accommodate and disparate treatment, at least at this stage, the facts can be pled identically, because direct evidence could emerge during discovery. Isn't that right? No, she has failed to point to any reason that she was treated differently from anyone else, or any facts that would suggest that there may be facts arising during discovery. In fact, the courts in general have reviewed quite a few vaccine claims, have reached the same conclusion. If you don't have direct evidence, you have to point to a comparator. Ms. Barnett has not alleged that she did so. She didn't suggest, for example, whether Inova treated her more harshly than individuals who declined to be vaccinated for non-religious reasons, which is a vital part of what the Chalmers case says she has to allege to make a disparate treatment claim. Turning to the cases from the other circuits, I think that they are distinguishable. Just briefly, the Eighth Circuit has taken a look at a case and said that the court below was wrong to dismiss cases that said, well, I have a sincerely held religious belief, which conflicts with my ability to receive your vaccine, without actually looking at the exemption requests, which were made part of that complaint. The court below here, in fact, did do that. When the Eighth Circuit looked at those exemption requests, there was a very clear objection to a fundamental tenet of their religious beliefs, in fact, which had to do with the use of aborted fetal cell tissue in the development of the vaccine. Similarly, in the Lucky case, this was a woman who was told at the application stage that there was no need to go forward because the recruiter said they won't accept any religious exemption request. And so that applicant had no chance to even place her religious concerns before the employer below. There are similar ways to distinguish those, and I'm happy to take the court's questions if you're interested. But I do think that it's very different. None of these cases said, I have a religious belief that makes me uncomfortable getting the vaccine right now, but not saying I am forbidden to receive the vaccine for that reason. How do you distinguish Sturgill and Passerella? And are there any circuits that have held along the lines that you're suggesting that we do? I'm not sure I heard the last part of your question. I'm just asking. It seems to me that you're urging us to create a circuit split on this issue. I would prefer not to create a circuit split, Your Honor. I think that this can be distinguished on its facts because the actual request was so transient and mutable. But I think that Sturgill, for example, can be distinguished because that particular individual had, yes, both medical and religious exemption requests, but nothing similar. The failure to, excuse me, the disparate treatment claim was actually dismissed there as well. But also, it was an absolute prohibition on receiving vaccines, not one that said, I can get some vaccines and not others, and maybe this one, but not today. With Passerella, it's a little harder. One of the individuals, upon looking at their complaint, it was really clear that they had something that was an absolute prohibition to vaccination, and I think the other plaintiff, that was not the case. I actually think that Judge Rovner, which is the dissent in that case, made an excellent point, which was that she did not believe that Congress, interpreting Welsh and Seager, actually intended to create a limitless entitlement to accommodation just because someone said they prayed about something. And despite the fact that she gave great deference to the fact that people can, of course, have both religious beliefs that would prevent them from being vaccinated, that that case, she would, that second plaintiff, she did not feel met that standard, and I think that's true here as well. Thank you so much. Thank you, Mr. Oak. Mr. Lawson, you have some time. I'll just quickly address a few points raised by counsel. First, as the Passerella case noted, these exemption requests are not written by lawyers. They're written by employees, and it may not have been a perfect exemption request, and they could have been stated differently or better, but... But, you know, Title VII cases, you know, when you look at, you know, circuit is probably, anyway, I don't want to say that, but Title VII case, that case is the summary judgment and cleanings and things like that. I just want to ask you this, because no one wants circuit splits, and your good colleague on the other side said this really wouldn't be a circuit split if we looked more deeply at the facts here. Because, you're correct, you did include the exemption request, correct? Yeah. With your pleading? It was. So, therefore, you opened the door beyond your pleadings alone when you did that. You realize that, right? I realize that. Okay, so you're stuck with that. So, her argument, I just wanted to finish my arguments, her argument is that after looking at that, I don't think this is a case, correct me if I'm wrong, I didn't hear anybody's questioning her sincerity or her religion at all. I guess the question is, you put that in there, and she said safety, and a lot of people were concerned about the safety, I guess, of the vaccine, but she did talk about her faith and that she wanted to wait until God, you know, a place where her faith would permit her to do that, right? That's what she said. That's right. So, but what's, the hard part about this case is this, when you looked at that granularly, she didn't say there was anything about any general tenet of her religion that prohibited her from taking it, nor it was no prohibition or any general tenet that might be in conflict, nor a prohibition. So, I guess the question is, at this point, having a safety issue, as many people questioned, and having a religious one, but the religious one did not have a prohibition. Like, for example, that some religions won't have a blood transfusion. They're just, period. They will not. This is not that case. The vaccine was not prohibited. So, because you, we know that the exemption, can you tell me why this gets even at this stage? That, and that's what the judge, I think, was concerned with. How do we, how do we stop this from being a complaint for a lot of people? Sure. Yeah. Tell me what, tell me that, just help me with that. Yeah. Your Honor, you've raised a lot of issues. First, I would just notice, in the Sturgill case, in the Sixth Circuit, they attached the exemptions to that. So, this is not without precedent that the plaintiffs had their whole exemption attached. The court said there, though, you shouldn't go through and parse out isolated claims, but take the, take the package as a whole, including the complaint and the exemption forms. And there, I, well, excuse me, it wasn't that case. It was the Bouvet case, which is a Seventh Circuit case, Passarella, sister case. They said there, specifically, it does not need to be lodged in a general tenet of a faith, but it can be one that an individual believes. This goes back to the Thomas Review Board case. Oh, I agree with that. I agree, but I just want to stop you there. That's not the I just said that she didn't allege it, but she has not alleged that there's a personal faith base for not taking it. She says that right now, I'm not going to take it because I'm waiting for affirmation from God, which is sincere. I mean, it doesn't matter. But that's the difference. You're right. It doesn't have to be. I just said it, but even if you get down to individually, she does not. Well, Your Honor, I may take issue with that because she cites scripture. She cites the scripture about the body's temple of God. She also cites scripture. It's out of the book of Romans about anything apart from faith is sin. And so she is rooting her beliefs. And I don't know that she even has to under the Supreme Court's rulings, but she's rooting her beliefs in her religious teachings. Yeah, but it's not an exact teaching on vaccines, but that's not in the scripture. But it has to lead to why she can't do this act that an employer is requiring, doesn't it? Yeah. Yes, you are right, but it does lead to that because she says, because of my teachings, because of my beliefs, then we go in prayer to God and we ask, Lord, give me peace if I can take this vaccine. And to counsel's point, I did want to address this. The conflict was with these exact vaccines. Clearly, the employer knew that Mrs. Barnett had a conflict with taking these vaccines because God had told her not to take these vaccines. So God had given her pause about this vaccine? I'd say more than pause. She said, I would be sinning against God. If she took it at this point, without further affirmation. The Bassinet case from the First Amendment. If she's saying you can't take it now, then that's the end of the discussion. And so that is what matters. I don't know if I've addressed, I think I'm. You have addressed my question, but I took up your time by your question, so if you had something to say, go ahead. I may have covered, oh, I did want to say, counsel, and she may have just misspoken, she said nowhere in our complaint had we pled that the committee was picking winners and losers. It's actually paragraph 16 of our complaint, cited in JA 16. We note there they picked winners and losers and chose which beliefs were legitimate. And that's why we think we have a disparate treatment claim pled at this stage. And again, I understand we're at the pleading stage, but we don't have the discovery to know exactly what the committee did. We just know the results as it relates to Mrs. Barnett. And if I could come over my time. No, go ahead. Well, I did want to say one thing. And maybe this is too bold. I'm not a regular appellate lawyer. But I wanted to say the AFRICA standard is not appropriate in these situations. And I would ask this court to reject it expressly. Because what happened here is the court brought in that standard, talks about beliefs that are comprehensive in nature, and that's a helpful indicia for deciding if a belief is a religion. But it's not a helpful indicia when you're deciding whether a particular belief should be credited as religious. And that's a very dangerous thing. And I think it's helpful that these other circuits have reversed their courts. Because they're setting really bad precedents for religious adherence. And so, again, I may have misspoken to say that. But I just wanted the court to know. No, I understand. It's a point well taken. But I don't have to apologize for the point. I understand. I don't do this very often. Well, I understand what you're arguing. Go ahead. But when I do, Your Honor, I always get you. I don't know if you've noticed. That's because you wear those nice bow ties. Yeah, but you didn't wear yours today, I noticed. Thank you. All right. Thank you, counsel. We'll come down to Greek Council and proceed to our final case for the session.
judges: Roger L. Gregory, Stephanie D. Thacker, Nicole G. Berner